1

2

THE HONORABLE STANLEY A. BASTIAN

3    MICHAEL E. McFARLAND, JR., #23000
     RACHEL K. PLATIN, #58280

4    Evans, Craven & Lackie, P.S.

5    818 W. Riverside, Suite 250

6    Spokane, WA 99201-0910
     (509) 455-5200; fax (509) 455-3632

7    Attorneys for Defendants

8

9                IN UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF WASHINGTON

10

11   RANDEY THOMPSON,

12                                        Cause No. 2:21-cv-00252-SAB
                     Plaintiff,
13   vs.                                  **DEFENDANTS BEN**

14                                        **SMALL'S, DEBRA LONG'S,**
     CENTRAL    VALLEY    SCHOOL          **MYSTI RENEAU'S, KEITH**
15   DISTRICT  NO.  365;  BEN  SMALL      **CLARK'S, TOM DINGUS'**
16   INDIVIDUALLY          AS            **AND CYNTHIA**
     SUPERINTENDENT OF THE CENTRAL        **MCMULLEN'S LCivR**
17   VALLEY      SCHOOL      DISTRICT,    **56(c)(1)(A) STATEMENT OF**
     CENTRAL    VALLEY    SCHOOL          **MATERIAL FACTS NOT IN**
18   DISTRICT   NO.   365   BOARD   OF    **DISPUTE**
19   EDUCATION    AND    IN    THEIR
     INDIVIDUAL  CAPACITY  BOARD  OF
20   EDUCATION     MEMBERS      AND
21   DIRECTORS   DEBRA   LONG,   MYSTI
     RENEAU,   KEITH   CLARK,   TOM
22   DINGUS, AND CYNTHIA MCMULLEN,

23
                     Defendants.
24

25

26

27

28   INDIVIDUAL DEFENDANTS' LCivR 56(c)(1)(A)
     STATEMENT OF MATERIAL FACTS NOT
29   IN DISPUTE  - page 1

30                                        *Evans, Craven & Lackie, P.S.*
                                          818 W. Riverside, Suite 250
                                          Spokane, WA 99201-0910
                                          (509) 455-5200; fax (509) 455-3632

Defendants Ben Small, Debra Long, Mysti Reneau, Keith Clark, Tom Dingus and Cynthia McMullen respectfully submit, pursuant to L.Civ.R. 56(c)(1)(A) the following undisputed facts that entitle them to a finding of qualified immunity and the dismissal of Plaintiff's 42 U.S.C. § 1983 claim against them.

1.    On August 17, 2020 Mr. Thompson posted a rant on his Facebook page that included profanity, derogatory and violent language. ECF 1 ¶ 166; *Screenshot of Randey Thompson Facebook Post.* The post was seen by a fellow CVSD employee and was forwarded to other employees until finally making its way to CVSD Superintendent Ben Small. Rowell Decl. ¶ 2-3.

2.    The Facebook post contained the following language:

> Demtard convention opens and the only facts spoken were the names. Lie after lie. The fact checkers could retire on Michelle Obama's rant alone. What s hatefull racists bitch. If you need to lie to try and win you are just shit. If you believe them you are even worse. Wake the fuck up America. You are being played by a fake media, athleats and performers (who are really clueless and flyers with pedophile man) and the former DNC, now just the little bitch of Marxist BLM, Antifa, and Soroas socialist. You are missing out on a great country and the rest of us are sick and tired of your act and going to take you to the woodshed for a proper education. May God help you to pull your heads out of your asses so we will

INDIVIDUAL DEFENDANTS' LCivR 56(c)(1)(A)
STATEMENT OF MATERIAL FACTS NOT
IN DISPUTE  - page 2

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

not have too. Time for the red tide. Lets see how long
until the FB liberal defenders take this one down.

Rowell Decl. Exhibit A.

3.    On August 19, 2020, CVSD placed Mr. Thompson on paid administrative
leave while it investigated the matter. Rowell Decl. ¶ 4. Placing an employee on
paid administrative leave while CVSD investigates the employee is standard
protocol at CVSD. *Id.*

4.    On August 20, 2020, CVSD retained attorney Ann Allen as an
independent third-party investigator to investigate Mr. Thompson's Facebook
post. Rowell Decl. ¶ 8.

5.    Ms. Allen conducted interviews with individuals who read and/or reported
their concern about the same to administration, as well as other individuals
understood to have knowledge of Mr. Thompson in his administrative role. *Id.*

6.    The latter part of the investigation was for the purpose of determining
whether Mr. Thompson had engaged in any conduct or made any statements
while at school that were similar in nature to those in his Facebook post. *Id.*

7.    Between August 24, 2020 and August 26, 2020, Ms. Allen conducted
interviews of the following people: (1) Megan McMurtrey (now Counselor at

INDIVIDUAL DEFENDANTS' LCivR 56(c)(1)(A)
STATEMENT OF MATERIAL FACTS NOT
IN DISPUTE  - page 3

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

Ridgeline High School); (2) Christy Swan (now Principal at Chester Elementary School); (3) Sasha Deyarmin (Principal at Ponderosa Elementary); (4) Brandon Deyarmin (Assistant Principal at University High School); (5) Mike Syron (Principal at Evergreen Middle School); (6) Kerri Ames (Principal at Central Valley High School); and (8) Katie Louie (Vice Principal at Central Valley High School). Rowell Decl. ¶ 9; Allen Decl. ¶ 3-5.

8.      Those interviewed found the language in the Facebook post to be shocking and concerning coming from an individual in a leadership role at the district. Allen Decl. ¶ 6, Exhibit A.

9.      The individuals interviewed all agreed that the word "demtard" was highly offensive and potentially extremely hurtful to students, families, and members of the community. *Id.*

10.      The individuals interviewed all expressed concern about the hatred and language in the post and were concerned about the negative impact it could have between CVSD and its community because the post was not reflective of CVSD's mission to help all children. *Id.*

11.      Ms. Allen next interviewed CVSD administrators Mike Syron, Kerri Ames, Kent Martin, and Katie Louie. Allen Decl. ¶ 7.

INDIVIDUAL DEFENDANTS' LCivR 56(c)(1)(A)
STATEMENT OF MATERIAL FACTS NOT
IN DISPUTE  - page 4

12.    Those interviews focused on learning about Mr. Thompson's background and their interactions with him. *Id.*

13.    The stated purpose of the interviews was to determine whether there had been a pattern of conduct that indicated that Mr. Thompson's behavior in posting such statements would likely be repeated. *Id.*

14.    Mr. Thompson's supervisor, Mr. Syron, discussed inappropriate and insensitive words used by Mr. Thompson in a presentation to staff, i.e., calling students of the past "Norman Rockwell Kids" and students of today "Tide Pod Challenge Kids," saying that students today have "snowflake" syndrome and that they are entitled. Allen Decl. ¶ 8; Syron Decl. ¶ 6, Exhibit B.

15.    Mr. Syron discussed that he had warned Mr. Thompson not to use that language prior to the presentation, but that Mr. Thompson did anyways. Syron Decl. ¶ 8.

16.    As predicted, the staff did not appreciate the labels and a number of staff expressed their concern and disapproval of the same to Mr. Syron following the presentation. *Id.*

17.    Mr. Syron determined that he would no longer permit Mr. Thompson to present to the staff again. *Id.*

INDIVIDUAL DEFENDANTS' LCivR 56(c)(1)(A)
STATEMENT OF MATERIAL FACTS NOT
IN DISPUTE  - page 5

18.    Kerri Ames was interviewed by Ms. Allen based on her experience working with Mr. Thompson at Central Valley High School. Allen Decl. ¶ 9.

19.    Ms. Ames reported that Mr. Thompson used the word "short bus" in reference to special education students and did not permit him to give presentation to the staff. *Id.*

20.    Ms. Louie was interviewed by Ms. Allen based on her experience working with Mr. Thompson at Central Valley High School. Allen Decl. ¶ 10.

21.    Ms. Louie stated that one group meeting included ten (10) students that self-identified as African-American. *Id.*

22.    The questions for that meeting had been thoughtfully drafted. *Id.*

23.    Ms. Louie reported that at the end of the meeting Mr. Thompson moved off script and asked one particular student if he felt that teachers had treated him differently than the "normal" students. *Id.*

24.    Based on these responses from Ms. Allen's interviews, Mr. Rowell determined that the Facebook post was not an isolated incident, and it became clear to him that remediation and correction of Mr. Thompson's behavior might not be possible. Rowell Decl. ¶ 10.

INDIVIDUAL DEFENDANTS' LCivR 56(c)(1)(A)
STATEMENT OF MATERIAL FACTS NOT
IN DISPUTE  - page 6

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

25.    From September 8, 2020 to September 15, 2020, Mr. Rowell conducted Impact Interviews to determine the potential impact of Mr. Thompson's statements, both on Facebook and while working. Rowell Decl. ¶ 11, Exhibit C.

26.    Mr. Rowell was interested in determining whether Mr. Thompson's conduct had a negative impact on his ability to work in a leadership position with CVSD, and how his comments impacted administrators, parents, teachers and school board members. *Id.*

27.    Mr. Rowell interviewed two (2) board members, two (2) in-district administrators, two (2) in-district teachers and (2) parents of current CVSD students. Rowell Decl. ¶ 12.

28.    In the interview, Mr. Rowell read the content of the Facebook post (without identifying Mr. Thompson's identity) to the person he was interviewing and asked for his or her impressions and thoughts about the same. *Id.*

29.    The school staff reported that if they became aware that an assistant principal they worked with thought or said these things that they would have difficulty working with that person and that it would detrimentally impact that administrator's relationships with the staff, students and their families. *Id.*

INDIVIDUAL DEFENDANTS' LCivR 56(c)(1)(A)
STATEMENT OF MATERIAL FACTS NOT
IN DISPUTE  - page 7

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

30.     The parents interviewed reported that they would be wary of sending their children to any school at which Mr. Thompson was an administrator, and that Mr. Thompson's derogatory, hateful and potentially racist statements reflects poorly on CVSD. *Id.*

31.     School staff and administrators also reported that Mr. Thompson's offensive statements ran contrary to the CVSD School Board's recent Resolution Recommitting to Equity and Inclusion. *Id.*

32.     On or around September 15, 2020, Mr. Rowell called Ty Larsen, Mr. Thompson's CVSD representative, to schedule a Notice and Opportunity meeting that would be held on the virtual video meeting software WebEx to discuss Mr. Thompson's Facebook post and the statements he made at work. Rowell Decl. ¶ 15.

33.     On September 22, 2020, a Notice and Opportunity meeting was held with Mr. Thompson to discuss two allegations against him: (1) he posted an inappropriate and offensive comment on Facebook recently; and (2) he made derogatory and insensitive comments while at work. Rowell Decl. ¶ 16, Exhibit E.

INDIVIDUAL DEFENDANTS' LCivR 56(c)(1)(A)
STATEMENT OF MATERIAL FACTS NOT
IN DISPUTE  - page 8

34.    Mr. Thompson was asked a number of questions regarding what he had posted, who he intended to see the post and questions about the nature of the words and phrases he used in the post. Rowell Decl. ¶ 17.

35.    Mr. Thompson claimed that he believed he sent the Facebook post in question to only twelve (12) select friends that share similar political opinions with him. Rowell Decl. ¶ 18.

36.    Mr. Thompson claimed that he had written a different, albeit similar, post that censored profanity, did not have spelling errors, and had a few word changes. *Id.* at 20. The content of the post Mr. Thompson claims he actually posted is as follows:

> Demtard convention opens and the only facts spoken were the names. Lie after lie. The fact checkers could retire on Michelle Obama's rant alone. If you need to lie to try and win you are just shit. If you believe them you are even worse. Wake the f@#k up America. You are being played by a fake media, athlete and performers (who are really clueless and flyers with pedophile man) and the former DNC, now just the little puppet of Marxist BLM, Antifa, and Soroas socialist. You are missing out on a great country and the rest of us are sick and tired of your act and going to take you to the woodshed for a proper education. May God help you to pull your heads out of your asses. Time for the red tide. Lets see how long until the FB liberal defenders take this one down.

INDIVIDUAL DEFENDANTS' LCivR 56(c)(1)(A)
STATEMENT OF MATERIAL FACTS NOT
IN DISPUTE  - page 9

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

Rowell Decl. Exhibit F.

37.     Mr. Thompson explained at the meeting that he was just sharing his political frustration when he posted the comment. Rowell Decl. ¶ 22.

38.     He said that he did not regret making the comments and that he felt comfortable saying what he did within his small group. *Id.*

39.     He also said that he believed the comments were civil based on the audience but agreed they would not be civil to the public at large and that there was a better way to express his opinions. *Id.* at 23.

40.     Mr. Thompson also said at the meeting that he understood why CVSD would be concerned with the use of the word "Demtard," as it is insulting to special needs students. Rowell Decl. ¶ 24.

41.     He also told Mr. Rowell that he understands how the post would reflect poorly on CVSD if the post was seen by the public and connected it to him as a CVSD employee. *Id.*

42.     On October 21, 2020, Mr. Thompson submitted a written document to Mr. Rowell through his CVSD Representative Mr. Larsen. Rowell Decl. ¶ 28, Exhibit I.

INDIVIDUAL DEFENDANTS' LCivR 56(c)(1)(A)
STATEMENT OF MATERIAL FACTS NOT
IN DISPUTE  - page 10

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

43.    This document was prepared by Mr. Thompson and details his research and response to the allegations presented. *Id.*

44.    The document also discusses Mr. Thompson's beliefs on how a hacker can change who sees a post from the intended individuals to everyone on a user's "friends list," how someone takes a screenshot of a post, and that once a post is the deleted, the post, activity log and who sent the post is all gone and not retrievable. *Id.*

45.    The document also includes a timeline of Mr. Thompson's recollection of events from when he first decided to make a Facebook post on August 17, 2020 through August 27, 2020. *Id.*

46.    Mr. Thompson maintained in this letter that his Facebook post had been hacked and that he had been honest throughout this process. *Id.*

47.     As a result of Mr. Thompson's claims that his Facebook post had been hacked, CVSD hired a Forensic Examiner to determine whether Mr. Thompson's Facebook account had been compromised. Rowell Decl. ¶ 30.

48.    Mr. Rowell contacted the forensic examiner, Joshua Michel, on October 6, 2020. *Id.*

INDIVIDUAL DEFENDANTS' LCivR 56(c)(1)(A)
STATEMENT OF MATERIAL FACTS NOT
IN DISPUTE  - page 11

49.    Mr. Rowell received Mr. Michel's completed report on December 15, 2020. Rowell Decl. ¶ 31.

50.    Per the report, Mr. Michel found no evidence of unauthorized use of Mr. Thompson's Facebook account. *Id.*; Rowell Decl. Exhibit K; Michel Decl.

51.    Mr. Michel's report discussed that Mr. Thompson had not been entirely cooperative or forthcoming with Mr. Michel and concluded that there was no evidence that Mr. Thompson had been "hacked." *Id.*

52.    This conclusion caused Mr. Rowell to have serious concerns about Mr. Thompson's truthfulness in the investigation. Rowell Decl. ¶ 31.

53.    On January 20, 2020, Mr. Rowell emailed a Transfer Agreement directed to Mr. Thompson to his representative Ty Larsen. Rowell ¶ 32.

54.    The Transfer Agreement was intended to effectuate Mr. Thompson's voluntary relinquishment of his current Assistant Principal position and transfer to a new position, effective June 30, 2021. *Id*; Rowell Decl. Exhibit L.

55.    Mr. Rowell informed Mr. Larsen that CVSD was proposing the Transfer Agreement in part to avoid having to address the allegation that Mr. Thompson had lied, and continued to lie, in asserting that someone hacked his account. Rowell Decl. ¶ 33.

INDIVIDUAL DEFENDANTS' LCivR 56(c)(1)(A)
STATEMENT OF MATERIAL FACTS NOT
IN DISPUTE  - page 12

56.     Mr. Rowell cautioned that addressing the allegation could lead to even more serious consequences for Mr. Thompson. *Id.*

57.     On February 10, 2021, Mr. Rowell received a letter from Mr. Thompson rejecting the proposed transfer. Rowell Decl. ¶ 34, Exhibit N.

58.     Mr. Rowell then informed Mr. Thompson that based on the finding of Mr. Michel's report and his rejection of the Transfer Agreement, that there would be a second Notice and Opportunity meeting. Rowell Decl. ¶ 35.

59.     The second Notice and Opportunity meeting was held on May 6, 2021. Rowell Decl. ¶ 36.

60.     The meeting contained two new allegations against Mr. Thompson: (1) he interfered with CVSD's investigation by deleting emails, by refusing to provide the forensic examiner with his devices, and by wiping and clearing his digital devices; and (2) he had been dishonest by saying that that Facebook account was hacked. *Id*; Rowell Decl. Exhibit P.

61.     At the meeting Mr. Thompson was asked about his prior assertion that his Facebook account had been hacked. Rowell Decl. ¶ 41.

INDIVIDUAL DEFENDANTS' LCivR 56(c)(1)(A)
STATEMENT OF MATERIAL FACTS NOT
IN DISPUTE  - page 13

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

62.    Mr. Thompson continued to maintain that his account had been hacked and that he did not file a report with Facebook because he believed a Facebook employee to be the suspected hacker. *Id.*

63.    Mr. Thompson admitted that he did not have evidence to support this belief. *Id.* at 43.

64.    On May 10, 2021, Superintendent Small sent a Notice of Transfer to a Subordinate Position via certified and regular mail to Mr. Thompson. Rowell Decl. ¶ 49, Exhibit Q.

65.    This Notice explained that it was in the best interests of CVSD to transfer Mr. Thompson from his position of assistant principal to a certificated teacher position. *Id.*

66.    The Notice of Transfer also informed Mr. Thompson that pursuant to RCW 28A.405.230, he has a right to meet informally with the School Board in an executive session to request that the Board reconsider Mr. Small's decision to transfer him. Rowell Decl. ¶ 50.

67.    On June 14, 2021, Mr. Thompson attended a regularly scheduled Board meeting. Rowell Decl. ¶ 51, Exhibit R.

INDIVIDUAL DEFENDANTS' LCivR 56(c)(1)(A)
STATEMENT OF MATERIAL FACTS NOT
IN DISPUTE  - page 14

68.    The Board convened at 7:40 p.m. in Executive Session to review the performance of a public employee. *Id.*

69.    The Executive Session ended, and the Board members rejoined the open Board meeting at 8:40 p.m. Cynthia McMullen motioned, and Tom Dingus seconded, to uphold Superintendent Small's decision to transfer Mr. Thompson to a subordinate certificated position and have the board president provide written notice of that decision within ten days following this meeting. *Id.* A Roll Call vote was taken at the request of Ms. McMullen. *Id.* Debra Long, Mysti Reneau, Ms. McMullen, Keith Clark and Ms. Dingus voted "YEA" to this motion. *Id.* The meeting was then adjourned at 8:45 p.m. *Id.*

70.    The Board considered Mr. Thompson's appeal just as they have considered any employee's personnel appeal in the past. McMullen Decl. ¶ 17. The Board felt particularly concerned about the derogatory and violent language that was contained in the Facebook post and the pattern of behavior by Mr. Thompson, as discovered in the investigation. *Id.* at ¶ 18. The Board felt that Mr. Thompson could not be trusted to hold this leadership position and that it was in the best interests of CVSD to transfer him to a subordinate certificated teaching position. *Id.* at ¶ 21-20.

INDIVIDUAL DEFENDANTS' LCivR 56(c)(1)(A)
STATEMENT OF MATERIAL FACTS NOT
IN DISPUTE  - page 15

71.    CVSD properly investigated the issue and made the personnel change consistent with Board policies and state law. *Id.* at ¶ 23.

DATED this 12th day of January 2022.

EVANS, CRAVEN & LACKIE, P.S.


By:    _____*s/ Michael E. McFarland, Jr.*_____
MICHAEL E. McFARLAND, JR., #23000
RACHEL K. PLATIN, #58280
Attorneys for Defendants

INDIVIDUAL DEFENDANTS' LCivR 56(c)(1)(A)
STATEMENT OF MATERIAL FACTS NOT
IN DISPUTE  - page 16

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Michael B. Love
Michael Love Law, PLLC
905 W. Riverside Ave., Suite 404
Spokane, WA  99201
Email:      mike@michaellovelaw.com

Robert F. Greer
Feltman Ewing, PS
421 W. Riverside Ave., Suite 1600
Spokane, WA 99201
Email:      robg@feltmanewing.com

   s/    Michael E. McFarland, Jr.
MICHAEL E. McFARLAND, #23000
RACHEL K. PLATIN, #58280
Attorneys for Defendants
Evans, Craven & Lackie, P.S.
818 W. Riverside Ave., Suite 250
Spokane, Washington  99201
(509) 455-5200
(509) 455-3632 Facsimile
MMcFarland@ecl-law.com

INDIVIDUAL DEFENDANTS' LCivR 56(c)(1)(A)
STATEMENT OF MATERIAL FACTS NOT
IN DISPUTE  - page 17

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632