1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                    EASTERN DISTRICT OF WASHINGTON
8

| | |
|---|---|
| 9  RANDEY THOMPSON, | No. 2:21-CV-00252-SAB |
| 10       Plaintiff, | |
| 11       v. | |
| 12  CENTRAL VALLEY SCHOOL | |
| 13  DISTRICT NO. 365; BEN SMALL, | |
| 14  individually as Superintendent of the | **ORDER GRANTING** |
| 15  Central Valley School District; CENTRAL | **DEFENDANTS' MOTION FOR** |
| 16  VALLEY SCHOOL DISTRICT NO. 365 | **SUMMARY JUDGMENT** |
| 17  BOARD OF EDUCATION and in their | |
| 18  individual capacity BOARD OF | |
| 19  EDUCATION MEMBERS and | |
| 20  DIRECTORS DEBRA LONG, MYSTI | |
| 21  RENEAU, KEITH CLARK, TOM | |
| 22  DINGUS, and CYNTHIA MCMULLEN, | |
| 23       Defendants. | |
| 24 | |

25       Before the Court are Defendants' Motion for Summary Judgment, ECF No.
26  71 and Plaintiff's Motion for Partial Summary Judgment, ECF No. 76. Plaintiff is
27  represented by Michael Love, Megan Clark, Samir Dizdarevic-Miller, and Robert
28  Greer. Defendants are represented by Michael McFarland, Jr., Christopher Kerley,

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1**

and Rachel Stanley. The motions were heard without oral argument.[1]

Defendants ask the Court to grant summary judgment in favor of them because a reasonable jury would not find that Plaintiff suffered a constitutional violation. Defendants assert that Plaintiff's use of derogatory language online and at school did not constitute speech on a matter of public concern; Plaintiff spoke as a public employee; Plaintiff's transfer to a teaching position was not motivated by protected First Amendment speech; Defendants had adequate justification for the transfer; and the reasons for Plaintiff's transfer were not pretextual.

Plaintiff asks the Court to grant summary judgment in favor of him because a reasonable jury could not find that Defendants did not violate his First Amendment rights after they unlawfully retaliated against him by placing him on administrate leave, investigating and ultimately demoting him because he made a private political Facebook post related to the 2020 Democratic National Convention.

**Motion Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

---

[1]Pursuant to Local Rule 7.1(i)(3)(B)(iii), the Court has determined that oral argument is not warranted.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 2**

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

When considering cross motions for summary judgment, the Court views the evidence for each of the motions in the light most favorable to the nonmoving party for that motion and determines whether there are any genuine issues of material fact and whether the non-moving party is entitled to judgment as a matter of law. *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 832 (9th Cir. 2002).

//
//
//
//
//
//
//
//
//
//
//
//

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 3**

## Underlying Facts

In August 2020, Plaintiff, an assistant principal at Evergreen Middle School in the Central Valley School District (CVSD), watched the Democratic National Convention. After watching the convention, he made the following Facebook post:



Plaintiff maintains the post appeared on his private Facebook account. He asserts this post was sent to 12 close conservative Facebook friends, and he did not intend to send the post to other individuals outside these personal friends.

He states that later, the following post was substituted for the original post:



**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4**

Plaintiff explained that while he posted the second post[2] his account was hacked and someone else posted the first example of the post to Facebook.

It is undisputed, however, that the first post was seen by a CVSD employee who forwarded it to another employees, who forwarded it to another employee until it was forwarded to CVSD Superintendent Ben Small.

Two days later, in the evening on August 19, 2021, Plaintiff received a phone call from Jay Rowell, Assistant Superintendent of CVSD, asking if he had made a post on his Facebook account about the Democratic National Convention. Plaintiff said that he did. He told Mr. Rowell it was a political post on his private Facebook account, and it had only been sent to a very few of his close personal friends and relatives who share similar political beliefs, and the post was made on his own computer and on his own free time.

Mr. Rowell informed Plaintiff that he was being placed on administrative leave immediately and he was not allowed on CVSD property and was not allowed to contact CVSD employees, teachers, parents, and students. Plaintiff states he was incredibly humiliated and was terrified that he was going to lose his job and his ability to ever work in education again.

Mr. Rowell indicates in his declaration that he placed Plaintiff on administrative leave due to the use of the word "Demtard," the profanity, and the potential racial overtones and because of the reported concerns from the employees who had either seen or had been forwarded the post. At this point, CVSD had no idea how widely the post had been disseminated.

Right after Plaintiff spoke with Mr. Rowell, he deleted his Facebook post. The next morning, Plaintiff called his union representative, Ty Larsen, to discuss the matter. He also deactivated his Facebook account. Later that day, he checked

---

[2] This screen shot did not come from Facebook. Rather, Plaintiff was able to find it on his phone.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5**

and his Facebook account was still active, so he deactivated it again. It became active again around 7:00 p.m., so he changed his password, deactivated the account. It stayed down.

On August 20, 2020, CVSD retained attorney Amy Allen to perform an independent third-party investigation into the Facebook post. During her investigation, which took place between August 24, 2020 and August 26, 2020, Ms. Allen learned that previously and while on school grounds, Plaintiff referred to Governor Inslee as "Governor Short Bus," frequently used the term "short bus" when discussing special needs students, asked a Black student whether he felt he had been treated differently than the "normal students, and referred to students in derogatory terms, including "Tide Pod Challenge Kids" and "Snowflakes."

On August 22, 2020, CVSD sent Plaintiff a letter indicating that he was being placed on administrative leave due to unprofessional conduct. He was instructed that while on leave he was not to report to work or come on any district property unless specifically directed to do so. He was to avoid retaliatory conduct toward others and avoid any contact with others that could be considered interfering with the investigation or that could be considered an attempt to influence the investigation. He was prohibited from having written or verbal contact with students.

In September 2020, Plaintiff was removed from the School Superintendent's Administrator email list, and as a result he was not made aware of multiple open positions for principals in CVSD and he was not able to apply for positions outside the District because two of the three references would or could no longer supply a recommendation.

From September 8, 2020 to September 15, 2020, Mr. Rowell conducted Impact Interviews to determine the potential impact of Plaintiff's Facebook statements and the statements he made while working at CVSD. He interviewed two Board Members, two in-district administrators, two in-district teachers and

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6**

two parents of current CVSD students. Mr. Rowell found that overall the interviewees expressed shock and concern about the statements and found these statements to be insensitive and detrimental to Plaintiff's relationship with staff, students and the community.

On September 23, 2020, a Notice and Opportunity hearing was held online with CVSD representatives Jay Rowell, Kent Martin and Sue Brown, along with Plaintiff and union rep Ty Larsen. The two allegations discussed at the meeting were: (1) Plaintiff posted an inappropriate and offensive comment on Facebook recently; and (2) he made derogatory and insensitive comments while at work.

At the meeting, Plaintiff stated he believed he sent the Facebook post to only 12 select friends that share similar political opinions with him and he didn't learn other people outside this group had seen the post until his sister told him two days later. Plaintiff also stated he did not write the Facebook post that was sent to Mr. Small. Rather, he wrote a different, but similar post that did not have any profanity, did not have any spelling errors, and had a few word changes. He believed his friends groups contained a couple of people he had not accepted. CVSD believed Plaintiff actually posted it to his Facebook page for broad dissemination, rather than Plaintiff "sending" the post to certain people.

Plaintiff stated he was just sharing his political frustration when he posted the comment; he did not regret making the comments; and he felt comfortable saying what he did within his small group.

Because Plaintiff indicated his Facebook account had been compromised, on October 6, 2020, Mr. Rowell contacted a Forensic Examiner, Joshua Michel, to investigate whether this was true.

Plaintiff responded to CVSD's allegations in a written document dated October 21, 2020. In it, Plaintiff stated he believed a hacker changed who saw his posts and also changed the post itself. He referred to the post that was ultimately viewed by Mr. Small as the "hacked" post.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 7**

Another meeting was scheduled with Mr. Larson, Plaintiff, Mr. Martin and Mr. Rowell for October 22, 2020 so Plaintiff could provide context to his written statement.

On December 15, 2020, Mr. Michel completed his forensic investigation. He found no evidence of unauthorized use of Plaintiff's Facebook account. Mr. Michel reported that Plaintiff had been very reluctant to provide his electronic devices and Facebook data history. Plaintiff refused to give Mr. Michel his login credentials and after much resistance provided only an incomplete history of his Facebook data. It appeared to Mr. Michel that Plaintiff was not entirely cooperative or forthcoming with him. Based on this report, Mr. Rowell believed that Plaintiff was not being truthful.

On January 21, 2021, CVSD offered Plaintiff a transfer to a teaching position if he signed a release and agreed to not sue CVSD. It indicated that if he agreed to the transfer, CVSD would end its investigation and not terminate him. He would receive a new contract to begin September 1, 2021, and a supplemental contract for July and August 2021. Mr. Rowell stated that CVSD proposed the Transfer Agreement in part to avoid having to address the allegation that Plaintiff had lied and continued to lie about having his account hacked, which could have possibly led to more serious consequences.

Plaintiff rejected the transfer offer on February 10, 2021.

On April 23, 2021, a Notice and Opportunity hearing was scheduled via Zoom, and when Mr. Rowell saw that Plaintiff's attorneys were accompanying him at the hearing, he refused to go forward that day and rescheduled the meeting.

On May 6, 2021, a Notice and Opportunity hearing was scheduled, and Plaintiff's attorneys did not accompany him. Mr. Rowe, Mr. Martin, Mr. Brown, Plaintiff and Mr. Larsen participated.

At the hearing, Plaintiff was asked about Mr. Michel's report and why he did not cooperate with him. He indicated he believed that a Facebook employee was

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 8**

the one who did the alleged hacking because in the past he has proved the Facebook fact checkers wrong. He believed that Facebook has a habit of "washing" people who disagree with them. He indicated he did not file a "hack claim" with Facebook because he does not believe Facebook cares and Facebook stands to gain financially. Plaintiff acknowledged he was still using Facebook.

On May 17, 2021, Plaintiff received a letter from CVSD dated May 10, 2021 informing him that he was being transferred to a teaching position. The letter identified seven reasons for the transfer: (1) Plaintiff's behavior while serving as an administrator had disrupted harmony among building staff and District representatives, to the point that returning him to a position as an administrator supported a reasonable prediction of disruption; (2) his comments could reasonably be perceived as insensitive at best and contrary to the District's mission of creating an inclusive culture, which cause significant concerns about Plaintiff's ability to be the type of administrator that serves the District's best interests; (3) Plaintiff's behavior, including his lack of inclusiveness, caused a lack of confidence by administrators (and others) and caused concern about his willingness to promote or even embrace the District's interest in an inclusive learning and working environment; (4) Plaintiff's behavior interfered with his ability to do his job, especially as a student disciplinarian and staff evaluator; (5) there is good reason to believe Plaintiff interfered with a District investigation about his behavior and he was not entirely truthful during the investigation, (6) his response to District concerns about his behavior demonstrate a lack of awareness and insight needed for a school administrator, and (7) in balancing of all circumstances, the overall best interest of the District would be served by transferring Plaintiff from an administrative position to a non-administrative certificated teaching position.

Plaintiff requested a hearing before the CVSD School Board, pursuant to Wash. Rev. code 28A.405.230. Plaintiff met with the CVSD Board on June 14, 2021. At the meeting, Plaintiff asserted that his posts were protected by the First

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9**

Amendment.

On June 25, 2021, Plaintiff received a letter indicating the Board upheld the superintendent's decision to transfer him to a certified teaching position. On June 29, 2021, Plaintiff received a letter indicating he was assigned to teach World History and Health and Fitness at Ridgeline High School, although he was not certified to teach World History.

### First Amendment Retaliation

The First Amendment forbids government employers from retaliating against employees for speaking out on matters of public concern. *Pickering v. Bd. of Educ. of Township High Sch. Dist.,* 391 U.S. 563, 564 (1968). That said, government employers may impose certain restraints on the speech of its employees that would be unconstitutional if applied to the general public. *Riley's Am. Heritage Farms v. Elsasser,* 32 F.4th 707, 721 (9th Cir. 2022) (quotation omitted). As the Supreme Court explained, the government has "interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with the regulation of the speech of the citizenry in general. *Pickering,* 391 U.S. at 568.

Moreover, when an employee speaks pursuant to their official duties, such speech is not protected by the Constitution. *Dahlia v. Rodriguez,* 735 F.3d 1060, 1067 (9th Cir. 2013). Cases subsequent to *Pickering* have developed a framework to balance the competing interests between the government employer and employee. *Kennedy v. Bremerton Sch. Dist.,* 597 U.S. 507, 527-28 (2022).[3]

---

[3] Recently, the Supreme Court suggested the *Pickering/Garcetti* and related cases analysis proceeds in two steps: first, courts should conduct a threshold inquiry into the nature of the speech at issue and whether the speech was made pursuant to official duties or as a citizen addressing matters of concern; and then, courts should attempt to engage in "a delicate balancing of the competing interests surrounding

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 10**

If a plaintiff's retaliation claim is subject to the *Pickering* framework, the Court must apply a two-step burden-shifting approach when reviewing a motion for summary judgment. *Riley's*, 32 F.4th at 721. First, a plaintiff must establish a prima facie case of retaliation by showing (i) they engaged in expressive conduct that addressed a matter of public concern; (ii) the government employer took an adverse action against them; and (iii) their expressive conduct was a substantial or motivating factor for the adverse action. *Id.*

In doing so, the plaintiff must show causation and the defendants' intent. *Id.* In the case of First Amendment retaliation, the plaintiff must show that the government employer acted with a retaliatory motive and that the defendants' "retaliatory animus" was the "but-for" cause of their injury, that is, the adverse action against them would not have been taken absent the retaliatory motive. *Nieves v. Bartlett*, 587 U.S. 391, 389 (2019).

If the plaintiff carries its burden of showing these three elements, the burden shifts to the government employer to show either that its "legitimate administrative interests in promoting efficient service-delivery and avoiding work-place disruption" outweigh the plaintiff's First Amendment interests, or that it would have taken the same actions in the absence of the plaintiff's expressive conduct. *Riley's,* 32 F.4th at 721.

The Supreme Court has recognized several factors in evaluating the impact of an employee's speech on the government agency's operation: (1) whether the statement impairs discipline by superiors or harmony among co-workers; (2) whether the speech has a detrimental impact on close working relationship for the speech and its consequences, including considering whether an employee's speech interests are outweighed by the interest of the State, as an employer in promoting the efficiency of the public services it performs through its employees. *Id.* at 527-28 (quotation omitted).

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 11**

which personal loyalty and confidence are necessary; or (3) whether the speech impeded the performance of the speaker's duties and interferes with the regular operation of the enterprise. *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). While the government can meet its burden by showing a reasonable prediction of disruption, it cannot rely on mere speculation that an employee's speech will cause disruption. *Brewster v. Bd. of Educ. Of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 979 (9th Cir. 1998).

Courts give the government employer's reasonable prediction of disruption greater deference than the justifications used to restrict the public's speech. But "[v]igilance is necessary to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of the employees' speech." *Rankin*, 483 U.S. at 384.

Thus, an employer must provide some evidence for the court to evaluate whether the government's claims of disruption appear reasonable. *Moser v. Las Vegas Metro. Police Dep't,* 984 F.3d 900, 909 (9th Cir. 2021) (citing *Craig v. Rich Twp. High Sch. Dist*. 227, 736 F.3d 1110, 1119 (7th Cir. 2013) ("[A]n employer's assessment of the possible interference caused by the speech must be reasonable—the predictions must be supported with an evidentiary foundation and be more than mere speculation." (quotation marks and citation omitted)).

"In the limited context of the *Pickering* balancing test, courts may consider the content of that speech to determine how much weight to give the employee's First Amendment interests." *Moser,* 984 F.3d at 906 (citing to *Connick v. Myers*, 461 U.S. 138, 146-47 (1983)). Thus, a sliding scale may be applied in which the state's burden in justifying a particular adverse employment action varies depending upon the nature of the employee's expression. *Moser*, 984 F.3d at 906.

//

//

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 12**

**Plaintiff's Prima Facie Case**

In the summary judgment contest, the first step this court must address is whether Plaintiff has established a prima facie case of First Amendment retaliation.[4]

**(i)    Nature of the Speech**

In this regard, the Court finds that Plaintiff's Facebook post was private speech on a matter of public concern. *See Rankin*, 483 U.S. at 387 (noting that "inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern."); *Riley's*, 32 F.4th at 723 ("There is no genuine issue of disputed fact that Riley engaged in such expressive conduct. Riley's tweets discussed matters that fall within the core of protected First Amendment activity including politics, religion, and issues of social relations."); *see also Anthoine v. N. Central Counties Consortium*, 605 F.3d 740, 748 (9th Cir. 2010) (noting the public concern inquiry is a question of law).

On the other hand, Plaintiff's alleged speech in referring to Governor Inslee as "Governor Short Bus," frequently using the term "short bus" when discussing special needs students, asking a Black student whether he felt he had been treated differently than "normal students" and referring to students in derogatory terms, including "Tide Pod Challenge Kids" and "Snowflakes" was speech made pursuant to his official duties and therefore, not constitutionally protected speech.

**(ii)    Adverse Employment Action**

It is undisputed that because of the Facebook post, Mr. Small and CVSD placed Plaintiff on paid administrative leave and initiated an internal investigation. In *Dahlia*, the Ninth Circuit recognized that placing an employee on administrative

---

[4] Because the Court must consider the merits of Plaintiff's constitutional claim in light of his request for injunctive relief, the Court will determine first whether Plaintiff's First Amendment rights were violated.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 13**

leave may constitute an adverse employment action if such action was "reasonably likely to deter" the employee form engaging in constitutionally protected speech. 735 F.3d at 1079. In *Dahlia*, the Circuit suggested that the inability to take a promotional exam, loss of pay, and opportunities for investigative experience, as well as the general stigma resulting from placement on administrative leave" would appear "reasonably likely to deter employees from engaging in protected activity." *Id.*

In this case, Plaintiff asserts that being placed on administrative leave barred him from contacting any fellow coworkers, District employees, parents or students and prohibited him from entering School District properly. There was also a general disgrace associated with being placed on leave. Moreover, Plaintiff was removed from the School District's Administrator's email list.

A reasonable jury could find that placing Plaintiff on administrative leave and initiating an investigation because of his Facebook post could constitute an adverse employment action. Thus, Plaintiff has met its burden regarding the second prong of his prima facie case.

**(iii)    Substantial or Motivating Factor**

To show retaliation for the speech was a substantial or motivating fact behind an adverse employment action, a plaintiff can (1) introduce evidence that the speech and adverse action was proximate in time, such that a jury could infer that the action took place in retaliation for the speech; (2) introduce evidence that the employer expressed opposition to the speech; or (3) introduce evidence that the proffered explanations for adverse action were false and pretextual. *Anthoine*, 605 F.3d at 750. This step is purely a question of fact. *Id.*

A reasonable jury could find that Plaintiff was transferred from an administrative position to a teaching position because of his Facebook post. The record is undisputed that he was transferred in part because of his use of the terms "Demtard" his use of profanity, and the potential racial overtones in the Facebook

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 14**

post. Because the entire post is protected speech, this is sufficient to meet the third prong of Plaintiff's prima facie case.

**Burden Shifting**

Because Plaintiff has met his burden of establishing a prima facie case, the burden then shifts to Defendants to show its interest in providing a safe and inclusive educational environment outweighs Plaintiff's First Amendment rights or that it would have made the same decision absent the protected speech.

**(iv)    Justification for Adverse Employment Action**

CVSD asserts it has a legitimate interest in protecting the learning environment at CVSD and ensuring its administrators foster a safe and inclusive educational environment. It argues that Plaintiff's use of belittling and insulting language undermines the school's commitment to a safe and supportive learning environment. It provided evidence from its focus groups to support its assertions that Plaintiff's statements were viewed as insensitive and detrimental to the relationship between staff, students, and the community.

In weighing Plaintiff's First Amendment rights against CVSD's interest in protecting the learning environment at CVSD, the Court applies a sliding scale in which CVSD's burden in justifying the transfer depends on the nature of Plaintiff's speech. *Moser*, 984 F.3d at 906.

Here, in applying the sliding scale, the use of the term "demtard" and other profanities outweighs CVSD interests justifying Plaintiff's transfer and less in favor of Plaintiff's interest in using derogatory terms on Facebook. It provided evidence that supported its concern for disruption and did not rely on mere speculation. Thus, CVSD has met its burden of showing that its legitimate interest in fostering a safe and inclusive educational environment outweighs Plaintiff's First Amendment interest in using the term "demtard" and other derogatory terms in his Facebook post.

As such, Plaintiff cannot show that Defendants violated his First

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 15**

Amendment rights.

### (v) Same Action Absent Protected Speech

CVSD has met its burden of showing that it would have taken the same action absent Plaintiff's Facebook speech. "A plaintiff cannot establish unconstitutional retaliation 'if the same decision would have been reached' absent the protected conduct, even if 'protected conduct played a part, substantial or otherwise' in motivating the [school district's] action." *Riley's*, 32 F.4th at 721.

Here, the record is undisputed that CVSD transferred Plaintiff because of Plaintiff's use of derogatory terms in his Facebook post, his alleged derogatory statements made during the course of his employment, his alleged obstructive behavior and perceived dishonesty during the investigation, and his unwillingness to appreciate the negative connotations of the words he used. Notably, the majority of Plaintiff's speech that was the cause of concern for CVSD was not constitutionally protected speech. No reasonable fact finder could find that CVSD transferred Plaintiff because he was critical of the Democratic Convention or the Democratic Party.

No reasonable fact finder could find that Defendants' reasons for transferring him are pretext for violating Plaintiff's First Amendment rights. *See Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 752 (9th Cir. 2001) (finding the plaintiff's failure to produce any evidence that the employer expressed opposition to their speech, or that the proffered reasons for the reassignment were false or pretextual, failed to create a genuine issue of material fact on whether the adverse employment action was motivated by the plaintiff's speech).

As such, Plaintiff cannot show that Defendants violated his First Amendment rights.

### Qualified Immunity

A Government official is entitled to qualified immunity from a claim for damages unless the plaintiff raises a genuine issue of fact showing (1) "a violation

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 16**

of a constitutional right," and (2) that the right was "clearly established at the time of [the] defendant's alleged misconduct." *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (quotation omitted). The Court may analyze these elements in any order. *Id.*

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). It is not necessary that a case is directly on point, instead existing precedent must have placed the statutory and constitutional question beyond debate. *Id.*

The Supreme Court has repeatedly instructed that courts must not define clearly established law at a high level of generality. *Ballentine*, 28 F.4th at 64 (quotation omitted). "The right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Reichle v. Howards*, 566 U.S. 658, 665 (2012) (quotations omitted); *see also Riley's*, 32 F.4th at 729 ("The right to be free from First Amendment retaliation cannot be framed as 'the general right to be free from retaliation for one's speech.' Rather, the right must be defined at a more specific level tied to the factual and legal context of a given case.")

As the Ninth Circuit observed, "[t]here will rarely be a case that clearly establishes that the plaintiff is entitled to prevail under the fact-sensitive, context-specific balancing required by *Pickering*." *Riley's,* 32 F.4th at 729.

Here, the individual Defendants are entitled to qualified immunity because it was not clearly established that transferring an assistant principal to a teaching position after an investigation revealed the assistant principle used derogatory language in a Facebook post, as well as during the course of his employment as a school administrator, where school officials believed the assistant principal lied during the investigation, could violate the assistant principal's First Amendment

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 17**

rights.

More specifically, the Court finds it was not clearly established that placing an employee on administrative leave in response to a Facebook post that contained derogatory language embedded within a political post would constitute an adverse employment action for First Amendment purposes. As *Dahlia* and subsequent case law indicates this is a factually intensive inquiry and Mr. Small was not put on notice that placing Plaintiff on paid administrative leave based on the facts known to him at the time would constitute an adverse employment action. Thus, Mr. Small is entitled to qualified immunity with respect to his decision to place Plaintiff on administrative leave.

Similarly, it was not clearly established that conducting an investigation after other employees complained about a Facebook post that contained derogatory language would constitute an adverse employment action for First Amendment purposes. Mr. Small is entitled to qualified immunity with respect to his decision to initiate an investigation.

### Conclusion

Summary judgment in favor of Defendants is appropriate because Plaintiff has not shown his First Amendment rights were violated when CVSD transferred him from being an assistant principal to being a certified teacher. Additionally, the individual Defendants are entitled to qualified immunity because it was not clearly established under the facts of this case that transferring Plaintiff to a teaching position could violate his First Amendment rights.

Accordingly, **IT IS HEREBY ORDERED**:

1.      Defendants' Motion for Summary Judgment, ECF No. 71, is **GRANTED**.

2.      Plaintiff's Motion for Summary Judgment, ECF No. 76, is **DENIED**.

3.      Plaintiff's Motion to Supplement the Summary Judgment Record, ECF No. 99 and Motion to Expedite, ECF No. 103, are **DENIED**, as moot.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 18**

4.      All pending motions are terminated.

5.      The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff.

**IT IS SO ORDERED**. The Clerk of Court is directed to enter this Order, forward copies to counsel, and **close** the file.

**DATED** this 15th day of August 2024.



Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 19**